UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-11464-MLW

MARY GOMES, GUARDIAN OF THE ESTATE OF
RICHARD P. GOMES, and MARY GOMES,
INDIVIDUALLY,

        Plaintiffs

v.

THE CITY OF BROCKTON, THE TRIAL COURT
OF THE COMMONWEALTH OF
MASSACHUSETTS, JESSE DRANE, and ONE OR
MORE UNKNOWN NAMED OFFICERS OF THE
BROCKTON POLICE DEPARTMENT,

        Defendants

DEFENDANT JESSE DRANE'S
LOCAL RULE 56.1 STATEMENT OF
UNDISPUTED FACTS IN SUPPORT
OF SUMMARY JUDGMENT

1.    At the time of the arrest giving rise to this litigation, June 25 2001, Richard Gomes was a heroin user (Deposition of Taylease Pina (attached hereto as 'Exhibit A'), p. 15, l. 20–p. 16, l. 19). Mr. Gomes would first 'shoot-up' with heroin on a daily basis when he woke up in the morning (Pina Depo., p. 25, l. 9-16), and thereafter 'shoot-up' three or four times per day (Pina Depo., p. 36, l. 12–p. 37, l. 2). Mr. Gomes was not working at that time and was supporting his habit by shoplifting (Pina Depo., p. 17, l. 17-19).

2.    At that time, Mr. Gomes also suffered from Type I Diabetes (insulin dependent diabetes) requiring regular monitoring of his blood glucose levels, monitoring and regulation of his diet, and parenternal administration of pharmaceutical insulin (Complaint, ¶11). As a result of these needs, Mr. Gomes would customarily carry with him an 'insulin kit' (Pina Depo., p. 13-19). The insulin kit contained items to check his blood sugar levels, hypodermic needles, bottles of insulin and candy (Pina Depo., p. 20, l. 20–p. 21, l. 3). Mr. Gomes would usually test his blood sugar levels when he first woke up in the morning (Pina Depo., p. 26, l. 5-7), and he would take his

insulin when he woke-up in the morning and before bed at night (Pina Depo., p. 43, l. 4-17). Mr. Gomes also tested periodically during the day and would take additional insulin on an as needed basis (Id.).

3.  On the morning of June 25, 2001, Mr. Gomes woke-up at a friend's house in the City of Brockton (Pina Depo., p. 18, l. 1-13). As was his custom, Mr. Gomes injected himself with heroin and insulin in the morning (Pina Depo., p. 25, l. 6–p. 26, l. 1 (heroin); p. 42, l. 20–p. 43, l. 3 (insulin)).

4.  On June 25, 2001 at 3:00 p.m., Mr. Gomes and his girlfriend Taylease Pina went to a Shaw's supermarket in the City of Brockton for the purpose of shoplifting merchandise to support their heroin habits (Pina Depo., p. 28, l. 7-17).

5.  Mr. Gomes did not have his insulin kit on his person when they arrived at the market. (Pina Depo., p. 44, l. 13-17).

6.  While in the store, Mr. Gomes and Ms. Pina were followed by the Shaw's security officer (Pina Depo., p. 29, l. 5-7). Mr. Gomes and Ms. Pina then ran out of the store (Pina Depo., p. 29, l. 8–p. 30, l. 12). The security officer confronted the pair outside the store and they ran away into the CVS Pharmacy in the same shopping center, where they were hoping to get lost in the crowd. (Pina Depo., p. 32, l. 2-4). The security officer followed (Pina Depo., p. 29, l. 3–p. 32, l. 4).

7.  At approximately 3:15 p.m., the dispatcher for the Brockton Police Department received a report of a larceny in progress at the Shaw's Supermarket in Brockton. The caller stated that a black female with a black shirt and shorts fled from the store with items towards the Center on Main Street. The caller also reported that a black male was with her (Brockton Police Department Radio Call Log, a true and accurate copy of which is attached hereto as 'Exhibit B').

8.  Brockton police officer Jesse Drane, Jr. was dispatched to the scene. Upon arrival, Officer Drane spoke with the security officer, Shaw's Loss Prevention Officer Angelo Lapanna, who stated that the two suspects had entered the store and started stealing items. Mr. Lapanna stated that he observed the suspects' activity and that when he approached them, they put the items down and proceeded to run out of the store towards the CVS Pharmacy (Deposition of Jesse Drane (attached hereto as "Exhibit C"), p. 85, l. 10-12).

9.  Officer Drane then proceeded to the CVS Pharmacy on Main Street in Brockton, where he apprehended the two suspects as they were leaving the store (Drane Depo., p. 12, l. 6-12).

10. The suspects were then identified by Mr. Lapanna as being the individuals that he saw shoplifting items in Shaw's (Drane Depo., p. 85, l. 23–p. 86, l. 2). Officer Drane also spoke with the manager of CVS who stated that he saw the two individuals attempt to put something in their pockets at that store, but that they had dropped the item and run out of the store when they saw him (Drane Depo., p. 86, l. 5-15). The two suspects were later identified as Richard Gomes and Taylease Pina (Drane Depo., p. 86, l. 16-19).

11. Officer Drane questioned Mr. Gomes and Ms. Pina at the scene. Ms. Pina was asked for and provided Officer Drane with her identification (Drane Depo., p. 23, l. 11-16; Pina Depo., p. 37, l. 17-19). Mr. Gomes, however, refused to provide identification and gave the name Joseph Gomes, with the date of birth of February 25, 1959 (Drane Depo., p. 87, l. 17-19; Pina Depo., p. 40, l. 22-23; Brockton Police Arrest Report, prepared by Offier Drane, attached hereto as "Exhibit D" as authenticated by Officer Drane (Drane Depo., p. 22, l. 11-21)). Mr. Gomes also gave Officer Drane a social security number (Drane Depo., p. 86, l. 20-23).

12. Officer Drane then called the Police Dispatcher with the information provided by Mr. Gomes. The Dispatcher processed the information through the Registry of Motor Vehicles

record system. According to the Dispatcher, the name given by Mr. Gomes did not match the social security number that Gomes had provided. Indeed, the social security number provided by the plaintiff belonged to a female (Drane Depo., p. 27, l. 23–p. 28, l. 7; p. 86, l. 20–p. 87, l. 2)

13.     When questioned further, Mr. Gomes admitted that he had been arrested before and that he was a heroin addict (Drane Depo., p. 87, l. 8-9). Accordingly, Officer Drane asked the Dispatcher to review the Board of Probation record keeping system. The Dispatcher reported that the Board of Probation records indicated no information for Joseph Gomes, but that Richard Gomes had outstanding warrants (Drane Depo., p. 87, l. 10–p. 88, l. 11).

14.     Based on the information provided by the Shaw's Loss Prevention Officer, the CVS manager and the information supplied by the Dispatcher, Mr. Gomes was arrested by Officer Drane and transported to the Brockton Police Station for booking (Drane Depo., p. 88, l. 21–p. 90, l. 19).

15.     At the point of arrest, there was no discussion among anyone in Officer Drane's presence regarding Mr. Gomes' status as a diabetic (Drane Depo., p. 91, l. 10-16; Pina Depo., p. 48, l. 18-21), and Mr. Gomes did not have his insulin kit on his person (Pina Depo., p. 44, l. 13-17).

16.     At the time of the arrest, Mr. Gomes did not show any outward signs of a need for medical attention: he did not seem confused, disoriented or intoxicated; he was not sluring his words; his eyes were not glassy; and he was responsive to Officer Drane's questions (Drane Depo., p. 43, l. 20–p. 44, l. 16).

17.     Officer Drane transported Mr. Gomes from the scene of the arrest to the Brockton Police Station, and during that time, Mr. Gomes did not inform Officer Drane of his status as a diabetic (Drane Depo., p. 92, l. 2-8).

18.     Upon arrival at the station, Officer Drane escorted Mr. Gomes to the booking area and processed his information (Drane Depo., p. 45, l. 2-4; p. 46, l. 14-18). The booking process lasted until approximately 4:35 p.m., at which time the plaintiff was escorted to a holding cell (Drane Depo., p. 92, l. 12-19). Mr. Gomes was charged with shoplifting, G.L. c. 266, §30A; giving a false name and social security number to a police officer, G.L. c. 268, §34A; and was held on the basis of four outstanding warrants (Brockton Police Department Arrest Booking Report, attached hereto as "Exhibit E" as authenticated by Officer Drane (Drane Depo., p. 41, l. 20– p. 42, l. 4)).

19.     Mr. Gomes did not inform Officer Drane of his status as a diabetic during the booking process (Drane Depo., p. 83, l. 1-7).

20.     Officer Drane is a part African-American, part Indian male with a medium-dark complexion (Drane Depo., p. 94, l. 19-22).

21.     On June 25, 2001, Officer Drane worked the 8:00 a.m. to 4:00 p.m. shift (Drane Depo., p. 38, l. 22-24). After completing the booking process and paper work associated with the Mr. Gomes' arrest, Officer Drane left the Police Station at approximately 5:30 p.m. (Drane Depo., p. 93, l. 22-24; p. 95, l. 14-16). June 26 and 27, 2001 were Officer Drane's days off, and after leaving the station at 5:30 p.m. on June 25th, he did not return to the station until June 28, 2001 (Drane Depo., p. 94, l. 9-14).

22.     Upon entry into the Brockton Police station, a civilian would first enter the public waiting area and speak to the desk officer through a plexi-glass window (Drane Depo., p. 64, l. 4–p. 65, l. 13). Officer Drane did not work as desk officer at any time on June 25, 2001, and was not in the area behind the plexi-glass window at anytime subsequent to the plaintiff's arrest (Drane Depo., p. 96, l. 20-22).

23.     Following Mr. Gomes' arrest, Ms. Pina drove to a friend's house and then went to the Brockton Police station (Pina Depo., p. 48, l. 3-15; p. 50, l. 18-22). When she entered the police station, Ms. Pina spoke with the desk officer and attempted to give him the plaintiff's insulin kit and inform him that the plaintiff was a diabetic (Pina Depo., p. 52, l. 10-16). Although Ms. Pina stated that she spoke with two officers, one white and one black, she does not recall whether they were involved in the arrest (Pina Depo., p. 84, l. 17-21).

24.     Officer Drane did not speak with Ms. Pina following the plaintiff's arrest (Drane Depo., p. 95, l. 4-6).

25.     As of the conclusion of his shift on June 25, 2001, Officer Drane did not know that Mr. Gomes was a diabetic (Drane Depo., p. 95, l. 17-20).

26.     Later that evening, around 7:00 or 8:00 p.m., the plaintiff's mother, Mary Gomes, and brother, Joseph Gomes, went to the police station in response to a call that Richard Gomes had been arrested (Deposition of Mary Gomes (attached hereto as 'Exhibit F'), p. 50, l. 5-8; p. 60, l. 18-20). Officer Drane was not present at the station (Drane Depo., p. 97, l. 6-8).

27.     When Mary and Joseph first arrived that the police station they spoke with a black police officer about the amount of Richard's bail (Mary Gomes Depo., p. 53, l. 5–p. 54, l. 4). The Gomes then left the police station to get the bail money, and when they returned they spoke with a different officer, who was white (Mary Gomes Depo., p. 54, l. 3-8). Ms. Gomes claims that she told the white officer about Richard's diabetic condition (Mary Gomes Depo., p. 54, l. 10-21). The only discussion that Ms. Gomes had about the plaintiff's diabetes was with a white police officer (Mary Gomes Depo., p. 55, l. 16-20).

28.     Officer Drane has never spoken to Mary or Joseph Gomes (Drane Depo., p. 97, l. 3-5).

6

29.  Mr. Gomes was not released on bail and was held at the Brockton Police Station overnight (Exhibit E).

30.  At approximately 6:00 a.m. on June 26, 2001, Mr. Gomes suffered a seizure and was taken by ambulance to Brockton Hospital (Brockton Police Department Prisoner Watch Form, attached hereto as 'Exhibit G' as authenticated by Officer Drane (Drane Depo., p. 97, l. 17–p. 98, l. 19).

31.  Mr. Gomes does not remember anything about the day that he was arrested (Deposition of Richard Gomes (attached hereto as 'Exhibit H'), p. 39, l. 16–p. 40, l. 16).

        DEFENDANT
        JESSE DRANE,
        By his attorneys,

        /s/ Gregg J. Corbo
        Joseph L. Tehan, Jr. (BBO # 494020)
        Gregg J. Corbo (BBO #641459)
        Kopelman and Paige, P.C.
        31 St. James Avenue
        Boston, MA  02116
        617-556-0007

274163/60700/0588