# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARY GOMES, GUARDIAN OF THE ESTATE OF RICHARD P. GOMES; et al.<br>　　　　　　　*Plaintiffs*,<br><br>　　　　　*vs.*<br><br>THE CITY OF BROCKTON; et al.<br>　　　　　　　*Defendants*. | *CIVIL ACTION*<br>No. **04-11464 MLW** |

## PLAINTIFFS' LOCAL RULE 56.1 COUNTER-STATEMENT OF UNDISPUTED FACTS

1. Admitted, except with respect to the allegations with respect to Mr. Gomes alleged heroin use, which plaintiffs state is not material to the legal grounds offered by the defendants in support of their respective motion for summary judgment, and such evidence is offered here solely for the purpose of unfairly prejudicing the plaintiffs, and ought be stricken.

2. Admitted.

3. Admitted, except with respect to the allegations with respect to Mr. Gomes alleged heroin use, which plaintiffs state is not material to the legal grounds offered by the defendants in support of their respective motion for summary judgment, and such evidence is offered here solely for the purpose of unfairly prejudicing the plaintiffs, and ought be stricken.

4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. Admitted.
12. Admitted.
13. Admitted.

14. Admitted.
15. Admitted.
16. Admitted.
17. Admitted.
18. Admitted.
19. Admitted.
20. Admitted.
21. Admitted.
22. Admitted.
23. Admitted.
24. Admitted.
25. Admitted.
26. Admitted.
27. Admitted.
28. Admitted.
29. Admitted.
30. Admitted.
31. Admitted.
32. Admitted, except that the policy herein stated is not the entire policy of the City of Brockton with respect to the care and treatment of arrestees and pre-trial detainees being detained in holding cells at the Brockton Police station. More particulars of the policy appear below.
33. Admitted, except that the in-service training was not particular to the City of Brockton, but was training given by the Massachusetts Criminal Justice Training Council, a commission existing under the Governor, pursuant to Mass. Gen. Laws ch. 6, § 17, prior to November 1, 2002. See also, Mass. Gen. Laws ch. 40, § 36C. Ex. N, (Conlon Dep. 26:21-24.)
34. Denied, in as much as this statement suggests or implies that a failure to devise and promulgate policies and procedures was the sole theory of negligence asserted against the city by the plaintiffs. The presentment letter specifically asserts respondeat superior liability (i.e. liability of the city, as that of any non-governmental employer, for the negligent acts or omissions of its employees acting within the scope of their employment) by the following quoted provision:

> The injuries described above were the direct and proximate result of the negligent breach, by … the City of Brockton, and [its] respective agents and servants, of duties owed (a) pre-trial detainees generally, (b) pre-trial detainees with known or constructively known physical disabilities, and (c) Mr. Richard Gomes particularly. These duties include the duty to provide, allow or arrange for critical care or treatment for known or constructively known chronic conditions suffered by persons who are in their custody ….

Ex. K, at p. 3.

## Plaintiffs' Statement of Additional Material Facts

35.  Pursuant to written Brockton Police Department policy, all duties and responsibilities with respect to the medical care and treatment of arrestees or pre-trial detainees (hereinafter "prisoners") falls upon the Shift Commander. Ex. I (Conlon aff.), at pp. 3 & 5; Ex. N (Conlon dep.), at pp. 20:21 – 21:12.

36.  At all relevant times, the chain of command with regard to the custody and well being of prisoners being held at the Brockton Police station was:

> First is the arresting officer who would take the prisoner into custody and transport him to the police station, and upon arrival at the police station the prisoner is booked. There is a booking officer and thereafter the prisoner is in the custody of the booking officer who is under the control of the officer in charge of the station, the shift commander.

Ex. N (Conlon dep.), at p. 16:11-19.

37.  In practice, the written policy and chain of command with respect to the medical well being of prisoners at the Brockton Police station worked as follows:

> when a prisoner is in a cell block it's the policy of the department that they will be checked at least every 15 minutes by the booking officer to ensure their well-being, and if anything is found to be awry or in need of medical attention, it's to be brought to the attention of the shift commander and the shift commander shall decide whether the person needs to be seen by a doctor or transported to a hospital.

Ex. N (Conlon dep.), at p. 18:10-19.

38. The shift commander does not generally go down to the cell blocks unless he is called there. Ex. N (Conlon dep.), at p. 32:20-24

39. The Brockton Police Department has no written policy advising or requiring the booking officer of when to inform the shift commander that a prisoner may need to go to the hospital or be seen by a doctor or of when to inform the shift commander that a prisoner says he needs to go to the hospital or be seen by a doctor. Ex. N (Conlon dep.), at pp. 33:16 – 34:21.

40. Pursuant to Brockton Police Department written policy and customary practices a booking officer and/or desk officer may choose to ignore, not document and not report to the shift commander a communication from a prisoner, his family, friends, physician or counsel, that the prisoner has a serious medical condition that requires monitoring, care or treatment. Id.

41. The Brockton police department has no written policy or procedure, nor any customary practice, pursuant to which an arresting officer, booking officer, shift commander, or any other of its police officers having custody of a prisoner, is advised or required to inquire of the prisoner or others as to any serious medical conditions that are or may be suffered by the prisoner and for which the prisoner does or may require monitoring, care or treatment by a medical professional. . Ex. N (Conlon dep.), at p. 30:3-10.

42. Facts exist in the medical record from which a jury could determine that the cause of Richard Gomes seizure at the Brockton Police station on June 26, 2001, was a failure to monitor or treat his diabetic condition. Ex. L (Adams aff.); Ex. P (Joslin clinic visit notes); Ex. Q (Shattuck Hospital discharge summary); Ex. R (Dr. Eakin probate medical certificate); Ex. S (Mass. General Hospital proposed treatment plan for guardianship petition); Ex. T (Brockton Hospital prescription instructions).

                              Respectfully submitted,
                              MARY GOMES, GUARDIAN and
                              MARY GOMES, INDIVIDUALLY, *Plaintiffs*
                              By their attorney:

                              */s/*
                              P. J. Adams, MA BBO# 568173
                              LAW OFFICE OF PAUL ADAMS
                              One Centre Street, 2nd Floor
                              Brockton, MA  02301-4092
                              Tel. (508) 583-2019

Dated: *September 7, 2006*

## CERTIFICATE OF SERVICE

     I hereby certify that on this date the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent via first class mail, postage prepaid, to those indicated as non-registered participants.

Dated: *September 7, 2006*

                                                      Paul J. Adams