UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARY GOMES, GUARDIAN OF THE ESTATE OF RICHARD P. GOMES, et al., *Plaintiffs*, <br><br> *v.* <br><br> THE CITY OF BROCKTON, et al., *Defendants*. | *CIVIL ACTION* <br> No. **04-11464 MLW** |

**NOTICE OF DEPOSITION**
Pursuant to Fed. R. Civ. P. 30(b)(6)

*To*:   John A. Walsh, Esquire            Joseph L. Tehan, Jr., Esquire
       WYNN & WYNN, P.C.                 KOPELMAN & PAIGE, P.C.
       90 New State Highway              101 Arch Street, 12 Floor
       Raynham, MA  02767                Boston, MA 02110-1109

       A.A.G. Charles M. Wyzanski
       ATTORNEY GENERAL'S OFFICE
       One Ashburton Place, Room 1813
       Boston, MA  02108

PLEASE TAKE NOTICE, that on **Wednesday**, **April 12**, **2006**, at **10:00 a.m.**, plaintiffs, Mary Gomes, Guardian of Richard Gomes, and Mary Gomes, Individually, will take the deposition upon oral examination of the defendant, <u>City of Brockton</u>, before a Notary Public or some other officer of the Commonwealth duly authorized to administer oaths, at the **Law Office of Paul Adams**, **One Centre Street**, **2nd Floor, Brockton**, **MA  02301**, pursuant to Rule 30 of the Federal Rules of Civil Procedure.

Rule 30(b)(6) of the Federal Rules of Civil Procedure requires the Deponent to identify one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person so designated, the matters on which he or she will testify. The person(s) so designated must testify as to matters known or

reasonably ascertainable to the deponent. The matters on which examination will be requested are set forth below.

A.   DEFINITIONS:

With respect to the "MATTERS OF INQUIRY" set forth below, the following definitions shall apply:

1. The "Department" means the police department of the defendant in the above-captioned action, the City of Brockton.

2. "Richard Gomes" means the plaintiff's ward in the above-captioned action, Richard Gomes.

3. "Mary Gomes" means the plaintiff in the above-captioned action, Marie Gomes.

4. "Drane" means the defendant in the above-captioned action, Jesse Drane.

5. The "City" or "Brockton" means the defendant in the above-captioned action, the City of Brockton.

8. The "Incident" means the events during, preceding, following, and involving, as well as all circumstances surrounding, the lapse of the plaintiffs' ward, Richard Gomes, into a state of seizure and unconsciousness while in the custody of the Brockton Police Department on or about June 26, 2001, at approximately 06:00 (6:00 a.m.).

9. "Communication(s)" shall mean correspondence, and any other kind of exchange or transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a document or documents, whether directly or through "c" or "cc" copying.

10. "Document" shall have the meaning set forth in Fed. R. Civ. P. 34(a) and shall include, without limitation, any writing, recording, photograph, computer data base, floppy disk, electronic mail or other item containing information of any kind or nature, howeever produced or reproduced, whether a original or duplicate, whatever its origin or location, and regardless of the form in which such information exists or is maintained.

11. "Person" means any natural person or any legal or business entity.

12. A "representative" of a person means any officer, director, agent, employee, attorney, or other representative of such person.

13. A "detailed description" means a complete, factual summary chronologically setting forth the substance of the evidence supporting and providing the identity (as defined below) of any person participating in, witnessing, or having knowledge of,

whether first hand or otherwise, any fact, action, occurrence, conduct, event, circumstances, or communication concerning the item in questions.

   14. "Identity" means the following: (a) when used in connection with a natural person, the full name of such person, the last known business or residence address of such person, and the business affiliation and position of such person during the relevant time period; (b) when used in connection with a legal or business entity, the full name of such entity and the address of its principal place of business and the identity of any representative of such entity who has knowledge relating to any information in connection with which such entity has been identified; and (c) when used in connection with a document or documents (whether privileged, quasi-privileged, or subject to some other claim exempting it from production), the date, author, recipients, nature, subject matter, in whose files the document is located, and the current custodian of the document. If a privilege is asserted regarding any document, "identity" means also to provide the specific basis for asserting the privilege (e.g. attorney-client communication, attorney work product, or other).

   15. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

B.    MATTERS OF INQUIRY

   1) The substance, and a detailed description, of all communications between any and all representatives of Brockton and/or the Department, on one side, and Richard Gomes and/or Mary Gomes, or any persons purporting to act on behalf of Richard Gomes, on June 25 and June 26, 2001.

   2) A detailed description of the events and circumstances that comprise and surround the Incident, as well as the identity of the person and/or documents that are the source of all such known details.

   3) The identity of all representatives of Brockton who were consulted for historical fact in connection with the preparation of Brockton's answer to the complaint in this action.

   4) The identity of all representatives of Brockton who were consulted for historical fact in connection with the preparation of the Brockton's mandatory initial disclosures in this action.

   5) The identify of all representatives of Brockton who were, on June 25 and June 26, 2001, in the chain of command with regard to the custody and well being of prisoners and detainees being held at the Brockton Police Station, Commercial Street, Brockton, MA, on those dates.

   6) The substance, and a detailed description, of all policies, practices and procedures, ordinances and regulations of Brockton and/or the Department in existence on June

25 and June 26, 2001, with respect to the medical well-being, medical screening, medical triage, medical care and medical treatment of prisoners or other persons detained in custody at the Brockton Police Station, Commercial Street, Brockton, MA, on those dates.

7) The substance, and a detailed description, of all policies, practices and procedures, ordinances and regulations of Brockton and/or the Department with respect to the medical well-being, medical screening, medical triage, medical care and medical treatment of prisoners or other persons detained in custody at the Brockton Police Station, Commercial Street, Brockton, MA, as those policies, etc., currently exist.

8) The substance, and a detailed description, including a complete history, of all modifications to policies, practices and procedures, ordinances and regulations of Brockton, made since June 26, 2001, made for the purpose, whether in whole or in part, of bringing the City and/or the Department into compliance with Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-34, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Massachusetts General Laws, chapter 272, section 98.

9) The substance, and a detailed description, including a complete history, of all policies, practices and procedures, ordinances and regulations of Brockton, issued, promulgated or existing, whether in whole or in part, for the purpose of bringing the City and/or the Department into compliance with Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-17, and the "handicapped person" anti-discrimination in employment provisions of Massachusetts General Laws, chapter 151B, sections 1 and 4.

10) Whether Brockton and/or the Department has made any "reasonable accommodation" pursuant to Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-17, and the "handicapped person" anti-discrimination in employment provisions of Massachusetts General Laws, chapter 151B, sections 1 and 4, with respect to employees or applicants for employment who suffer from any type of diabetes that requires regular parenteral administration of insulin.

11) Whether the Department has ever previously had in its custody any person who suffered from any type of diabetes that required regular parenteral administration of insulin, and whether any accommodation was made by the department for that person's medical needs.

12) Whether the Department has ever previously had in its custody any person who suffered from any type of diabetes that required blood sugar testing and a special diet, and whether any accommodation was made by the department for that person's medical / dietary needs.

13) The identify of the claims adjuster or investigator who has been assigned by Massachusetts Insolvency Fund, or one of its affiliates, to adjust and/or investigate the claims of plaintiffs against the Department, Brockton and its employees, and the name of the person or entity who employs said adjuster / investigator.

14) With respect to the incident, whether there exist any claims or wrongs for which Brockton or its insurer will not indemnify or otherwise hold harmless Brockton employees, generally, the Department, and Brockton police officers in this case.

15) With respect to police officer employees of the Department, the extent of the indemnification that is provided to them pursuant to any collective bargaining agreement or other labor agreement with Brockton, particularly with regard to the extent to which such indemnification is different and broader, in nature, scope and degree, from that provided by the Massachusetts Tort Claims Act, G. L. c. 258, § 1, *et seq*.

16) A detailed description of all facts upon which Brockton premises its Affirmative Defenses, including any defense of its agents or servants based upon a claim of qualified immunity.

17) A detailed description of all information communicated to members of the Department concerning the limits of their authority.

18) The identity of all representative(s) of Brockton or other person(s) who have the duty and authority to discipline members of the department.

19) The location, contents of, and the history and nature of amendments to, all duly promulgated rules, regulations and procedures of the Department.

20) Whether there is, and was on June 25 and June 26, 2001, any employees of the Brockton Police Department who had Type I (insulin dependant) Diabetes or other form of diabetes that requires regular parenteral administration of insulin, and whether the Department makes, made or had made, any accommodation for such condition with respect to such person's employment.  <u>Individually identifying information of any person with such medical condition will not be sought</u>.

21) The extent and nature of any employment accommodations the Department makes, made or had made with respect to any of its employees who have Type I (insulin dependant) Diabetes or other form of diabetes that requires regular parenteral administration of insulin,

22) Prior emergency medical incidents occurring in the lock-up or detention facility of the Brockton Police Department including the nature of the illness or trauma, the identity of the prisoner, detainee or sick or injured person, and the response to the situation and how it was initiated and by whom.

23) A detailed description of all facts that the Department or Brockton contends supports the conclusion that the seizure and coma of Richard Gomes was not reasonably foreseeable by those holding him in custody on June 25 and June 26, 2001.

24) A detailed description of all facts that the Department or Brockton contend support the conclusion that its agents or servants did not negligently breach a duty of care owed to the defendant, Richard Gomes, while he was in custody on June 25 and June 26, 2001.

25) A detailed description of all facts that the Department or Brockton contend support the conclusion that Richard Gomes did not suffer sever bodily injuries as a result of not receiving proper medical care or treatment while in the custody of the Department on June 25 and June 26, 2001.

26) A detailed description of all facts that the Department or Brockton contend support the conclusion that any possible accommodation allowing for the parenteral administration of insulin to persons held in custody by the Department, and for other treatment of diabetics including blood sugar monitoring and dietary accommodations, would result in a fundamental alteration in the nature of a the custodial confinement of persons at the Department, or would result in undue financial and administrative burdens.

The oral examination shall continue from day to day until completed. You are invited to attend and cross-examine.

                                           Respectfully,
                                           Plaintiffs
                                           By their attorney:

                                           P. J. Adams, MA BBO# 568173
                                           LAW OFFICE OF PAUL ADAMS
                                           One Centre Street, 2nd Floor
                                           Brockton, MA 02301
Dated: *March 28, 2006*               Tel. (508) 583-2019

CERTIFICATE OF SERVICE

I, P. J. Adams, hereby certify that I served the foregoing NOTICE OF DEPOSITION (deponent: *defendant, City of Brockton, Fed. R. Civ. P. 30(b)(6))* upon all interested parties by mailing a true and accurate copy thereof, together with a copy of any Subpoena or Subpoena Duces Tecum to be served on a non-party deponent, first class postage pre-paid, to counsel of record:

| | |
|---|---|
| John A. Walsh, Esquire<br>WYNN & WYNN, P.C.<br>90 New State Highway<br>Raynham, MA  02767 | Joseph L. Tehan, Jr., Esquire<br>KOPELMAN & PAIGE, P.C.<br>101 Arch Street, 12 Floor<br>Boston, MA 02110-1109 |

A.A.G. Charles M. Wyzanski
ATTORNEY GENERAL'S OFFICE
One Ashburton Place, Room 1813
Boston, MA  02108


Dated: _____    _____

In addition, as the Court notes, ante, at 6 7, by regulation a public entity is required only to make "reasonable modifications in policies, practices, or procedures" when necessary to avoid discrimination and is not even required to make those if "the modifications would fundamentally alter the nature of the service, program, or activity." 28 CFR § 35.130(b)(7) (1998).

The ADA defines "disability," "with respect to an individual," as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; "(B) a record of such an impairment; or "(C) being regarded as having such an impairment." §12102(2). There is no dispute that L. C. and E. W. are disabled within the meaning of the ADA.

in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service.

Fradera v. Municipality of MayagÜez, No. 05-2238 (Fed. 1st Cir. 3/1/2006) (Fed. 1st Cir., 2006) quoting Tennessee v. Lane, 541 U.S. 509, 532 (2004) (citations omitted) (citing 28 C.F.R. § 35.150(a)(2), (a)(3), (b)(1); id. § 35.151).

Recognizing that discrimination is taking place is critical because it shifts the burden to the government to justify the discrimination. Thus, a policy or practice that discriminates on the basis of disability in the administration of a governmental program cannot be defended on the basis that the policy is reasonable. The ADA sets a higher standard for justifying governmental discrimination on the basis of disability: in the present context, the government must show that the discrimination itself is "necessary" to the licensing scheme, or that modification would work a "fundamental alteration" in the program. See 28 C.F.R. § 35.130(b)(7) & (8); Clark v. Virginia Bd. of Bar Examiners, 880 F.Supp. 430, 442-43 (E.D.Va.1995) (holding that under Title II of the ADA, when an "additional burden discriminates against those with disabilities ... the [public entity] must show that [the additional burden] is necessary to the performance of its licensing function"). Theriault v. Flynn, 162 F.3d 46, 54 (C.A.1 (N.H.), 1998) (Lipez, J., concurring).

would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens