UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARY GOMES, GUARDIAN OF THE ESTATE OF RICHARD P. GOMES; et al. *Plaintiffs*, vs. THE CITY OF BROCKTON, *Defendant*. | ) ) ) ) ) ) ) ) ) ) | *CIVIL ACTION* No. **04-11464 MLW** |

## PLAINTIFFS' PRETRIAL MEMORANDUM

I.   CONCISE SUMMARY OF THE EVIDENCE

On the afternoon of Monday, June 25, 2001, the plaintiff's ward, Richard Gomes, was arrested by Brockton Police Officer Jesse Drane for shoplifting, and giving a false name to a police officer. He was arrested without a warrant. On the ride to the police station Richard told Officer Drane that he had a drug addiction to heroine. Officer Drane was also the booking officer and filled out the booking sheet for Richard as part of placing him in a cell in the City of Brockton lock-up (which is the cells located in the Brockton Police station). Officer Drane did not inquire of Mr. Gomes if he had any medical conditions. The only medical information that he noted on Richard's booking sheet was Richard's heroine addiction, which Officer Drane admits that Richard disclosed on the ride to the station.

Massachusetts has a state law that provides as follows:

> Each town containing more than five thousand inhabitants shall, … maintain a secure and convenient lockup to which persons arrested without a warrant may be committed ….

Mass. Gen. Laws. Ch. 40, § 34. That very same law also provides that:

> For the purposes of this section, the word "maintain" shall include the provision of any prescribed medication and nutritionally adequate meals to a person committed to such lockup.

Id.

The Brockton Police Department does not have any rule or regulation requiring, instructing or recommending that its officers in charge of arrestees inquire of persons in custody as to whether they need any prescription medication or if they might have any other medical issue or condition that might need attending to before they can be brought to court or bailed at the police station.  Nor does it have any rule or regulation requiring its officers to make a documentary notation or other permanent record if an arrestee simply volunteers medical information indicating that they may need to take prescription medication.

The plaintiff's ward Richard is, and was at the time, suffering diabetes mellitus, and was prescribed insulin and a regimen of blood sugar monitoring.  Federal regulations at the time of Richard's arrest described this disease as one typically understood as falling within the Americans with Disabilities Act.  His diabetes had long been described as brittle: requiring diligent monitoring of his blood sugar, and the administration of insulin when his blood sugar was too high, and the ingestion of carbohydrates (candy or other quickly metabolized carbohydrate) when his blood sugar was too low.

When Richard was arrested, he was with his then girlfriend – who was also addicted to heroine – Taylease Pina.  At the time of the arrest, Taylease had Richard's diabetes kit – which was a small black bag containing 2 bottles of insulin, syringes and a blood sugar testing device – in her pocketbook.  Though Taylease was at the scene, and had witnessed Richard give a false name – the name of his brother, Joseph – to Officer Drane, she was not arrested.

On the evening of Richard's arrest – June 25, 2001 – Taylease went to the Brockton Police station and told a police officer there that it was not Joey Gomes they had arrested, but Richie Gomes, and that he was an insulin dependent diabetic who needed his diabetes kit. She gave the kit to the police, spoke to Richie's family, and left the station. Richie's mother also went to the police station and told the police that Richard was an insulin dependent diabetic. The officer to whom she relayed this information replied: "we don't deal with needles in the police station.:

At approximately 6:15 a.m. on June 26, 2001, Richard was found unresponsive and in seizures in his cell at the Brockton Police lock-up. He was transported to Brockton Hospital, where he was unresponsive and admitted for eleven days. He was diagnosed with anoxic brain injury. A report of a neurology consultation done at Brockton Hospital on June 28, 2001, states: "He may have been hypoglycemic; his blood sugar afterwards was 74, so it was probably lower during that period. … I think the patient has a mixed metabolic encephalopathy, probably with a combination of hypoglycemia and drug withdrawal."

On July 26, 2001, he was transferred from Brockton Hospital to the Shattuck Hospital in Boston. His brother Joe discharged him from the Shattuck – against medical advice – and brought him that same day to the Massachusetts General Hospital, where he was admitted. From the time he was transferred from the Brockton Hospital he was continuously an inpatient at four different facilities over a period of approximately two years. During that period he was placed under the permanent guardianship of his mother, was placed in physical restraints because his brain injury made him unmanageable. He was given anti-psychotic drugs without his consent, and did not return home to his mother's house in Brockton until 2003. His medical bills during

this period include a bill of $28,474.00 from Brockton Hospital, and bills totaling $808,328.46 from Massachusetts General Hospital.

II.  FACTS ESTABLISHED BY PLEADINGS, ADMISSIONS OR STIPULATIONS.

   a.  Richard Gomes was taken into custody by the Brockton Police in the late afternoon or early evening of Monday, June 25, 2001.

   b.  On the morning of June 26, 2001, while in a cell in the lock-up at the Brockton Police Department, Richard Gomes suffered a seizure.

III. CONTESTED ISSUES OF FACT.

No specific facts in dispute have been identified by the defendant. Defendant's pretrial memorandum recites as contested "facts" only all those legal elements – at best, mixed questions of fact and law – that establish defendant's liability.

IV. JURISDICTIONAL QUESTIONS.

None.

V.  QUESTIONS RAISED BY PENDING MOTIONS.

Whether plaintiffs make out a prima facie case for recovery under any theory.

VI. ISSUES OF LAW

   A.  <u>Substantive Law</u>

      1.  The relevant decision maker for purposes of municipal liability under 42 U.S.C. § 1883.

The City of Brockton responded to a F. R. Civ. P. 30(b)(6) deposition notice by producing its current chief of police – William Conlon – who testified that the Brockton Police Department operates under a set of regulations issued under the authority of its Chief of Police. <u>Conlon Dep.</u> at p. 22, lns. 18-23. By Massachusetts statute, the defendant City of Brockton –is

required to "maintain" a city "lock-up." Mass. Gen. Laws ch. 40, § 34.  Pursuant to that same statute: "the word 'maintain' shall include the provision of any prescribed medication and nutritionally adequate meals to a person committed to such lockup." Id.

The same chapter of Massachusetts laws requires that the mayor of any city of over Mayor of Brockton is supposed to annually appoint a Keeper of the city lock-up.  Mass. Gen. Laws, ch. 40, § 35, by a writing recorded with the City Clerk.  Plaintiffs counsel has made a public request of the City Clerk for a copy of such record.  To date, none has been produced and none is believed to exist.  It is expected that the Clerk for the city will testify that there is no written record of such appointment despite the statute's requirement.

### 2. Standards for Determining Municipal Liability under the ADA and RA.

> To state a claim for a violation of Title II, a plaintiff must allege:  (1) that he is a qualified individual with a disability;  (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against;  and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability.  Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir.2000);  42 U.S.C. § 12132.

Toledo v. Sanchez, 454 F.3d 24, 31-32 (1st Cir. 2006).  The "by reason of" language of Toledo seems to require proof of "subjective intent" to make out a Title II violation.  Under Title I (dealing with employment discrimination against those with disabilities) there are four distinct types of discriminatory barriers that handicapped persons must confront when seeking employment:  (1) intentional discrimination for reasons of social bias, i. e., racial, sexual, religion, handicapped, etc.;  (2) neutral standards with disparate impact;  (3) surmountable impairment barriers;  (4) insurmountable impairment barriers.  Prewitt v. U.S. Postal Service, 662 F.2 292, at n. 19 (5th Cir. 1981).  The Supreme Court has recognized "disparate impact" as a viable theory to make out an ADA violation under Title I.  Raytheon Co. v. Hernandez, 540 U.S. 44, 52-53 (2003) ("[D]isparate-impact claims "involve employment practices that are facially

neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. [Citation omitted.] Under a disparate-impact theory of discrimination, 'a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a "disparate-treatment" case.' [Citations omitted.]). Given the underlying purposes of the ADA – to level the playfield for those with disabilities that do not make a real difference regarding the job, public service, public accommodation, etc., at issue – "disparate impact" theory would seem to apply as much in the Title II context as the Supreme Court recognizes that it applies in the Title I context  Under disparate impact theory – i.e. diabetics such as Richard Gomes, and those suffering mental disorders with both diabetes and heroin addiction problems, again, such as Mr. Gomes – are more likely to suffer unsafe confinement in the City of Brockton lockup, than those of us who are health or who have medical conditions that require less immediate care or constant monitoring.

Finally, with regard to the RA (Rehabilitation Act), there appears to be both textual and case law support for a distinction between it and the ADA on the causality requirements. To prevail on an intentional discrimination claim under the RA, a person must suffer discrimination "solely" because of the disability, while under the ADA, the disability need only be a motivating cause. Olmstead v. Zimring, 527 U.S. 581 (1999).

VII.   AMENDMENTS TO THE PLEADINGS

None at this time.

VIII.   ADDITIONAL MATTERS TO AID DISPOSITION.

The parties have agreed to attend mediation with Suzanne Delvecchio, Ret. Justice of the Massachusetts Superior Court, on Wednesday, January 31, 2007, at 10:00 a.m.

IX.  LENGTH OF TRIAL / JURY OR NON-JURY

The probable length of trial is one (1) week.  This is a jury case (except to the extent that purely equitable relief is sought or may be awarded).

X.  WITNESSES

  A.  Plaintiffs' Witnesses

1. Richard Gomes - fact witness;
2. Mary Gomes - fact witness;
3. Joseph Gomes - fact witness;
4. Taylease Pina – fact witness;
5. William Conlon, Chief - Brockton Police Department - fact witness;
6. Officer Jesse Drane – Brockton Police Department – fact witness;
7. Anthony Zeoli – City of Brockton, Clerk – fact witness;
8. James J. Gilbert, M.D. – Brockton Hospital treating physician – fact witness;
9. Anna Georgiopoulos, M.D. – Mass. General Hospital treating physician – fact witness;
10. Michael C. Randon, M.D. – Greenery Rehabilitation treating physician – fact witness

  B.  Defendant's Witnesses

1. Richard Gomes – fact witness;
2. Mary Gomes – fact witness;
3. Joseph Gomes – fact witness;
4. Taylease Pina – fact witness;
5. William Conlon, Chief – Brockton Police Department – fact witness;
6. Officer Kenneth Johnson – fact witness;
7. Officer Patrick O'Malley – fact witness;
8. Officer Michael Powers – fact witness;
9. Officer Scott Landry – fact witness;
10. Lt. Cudworth – fact witness;
11. Thomas Deters, Ph.D. – expert witness   Dr. Deters will testify in accordance with his report which is attached hereto.

XI.   PROPOSED EXHIBITS

    A.   Exhibits to be Introduced without Objection

| No. | Description |
|---|---|
| 1 | Brockton Police Department Booking Procedures |
| 2 | Brockton Police Department Uniform Branch Shift Commander Procedures |
| 3 | Brockton Police Department Booking Report |
| 4 | Brockton Police Department Arrest Report |
| 5 | Brockton Police Department Prisoner Log |
| 6 | Medical report of Mary Butterworth dated January 28, 1995 |
| 7 | Psychological evaluation prepared by Steven C. Hentoff, Ph.D. dated May 26, 1996 |
| 8 | Pre-accident medical records from Brockton City Hospital |
| 9 | Pre-accident records from Correctional Medical Services |
| 10 | Pre-accident and post-accident medical records from Caritas Good Samaritan Hospital |
| 11 | Post-accident records from Brockton Hospital |
| 12 | Ambulance record from American Medical Response dated June 26, 2001 for patient "Joseph" Gomes |
| 13 | Emergency Room record from Brockton Hospital dated June 26, 2001 for "Ricardo" Gomes |

    B.   Exhibits as to which Objections Have Been Reserved

| Letter | Description |
|---|---|
| A | Brockton Hospital medical records (selected M.D. reports) (redacted for Medicaid / MassHealth info) – 6/26/01 to 7/6/01[*] |
| B | Brockton Hospital medical bills (redacted for Medicaid / MassHealth info & |

---

[*] Defendant has reserved the right to object to these documents on relevancy grounds, not on authenticity grounds.

|   |   |
|---|---|
|   | payments) – 6/26/01 to 7/6/01 |
| C | Lemuel Shattuck Hospital medical records  - discharge summary |
| D | Massachusetts General Hospital Medical Records (redacted for Medicaid / MassHealth info) – 9/4/01 to 10/2/02 |
| E | Massachusetts General Hospital Medical Records (redacted for Medicaid / MassHealth info & payments) – 9/4/01 to 10/2/02 |
| F | Spaulding Rehabilitation Hospital medical records |
| G | Spaulding Rehabilitation Hospital medical bills |
| H | Greenery Rehabilitation & Skilled Nursing Center medical records |
| I | Greenery Rehbilitation & Skilled Nursing Center medical bills |
| J | Copies of the July 25 and July 26, 2001, official version of Mass. Gen. Laws. Ch. 40, §§ 34 & 35. |
| K | Medical report of Thomas Deters, Ph.D.* |

Respectfully submitted,

MARY GOMES, INDIVIDUALY and as
GUARDIAN OF RICHARD GOMES,
*Plaintiffs*
By their attorney:

       /s/ Paul J. Adams
Paul J. Adams,   MA BBO No. 568173
LAW OFFICE OF PAUL ADAMS
One Centre Street, 3rd Floor
Brockton, MA  02301
Tel. (508) 583-2019

---

* Plaintiff's objection is that the report is hearsay that is not within an exception, and that publication of the report to the jury and its availability in the jury room will unfairly bolster the testimony of defendant's expert witness.